UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TINIKA DAVIS                                              CIVIL ACTION

VERSUS                                                    NO: 15-88

OCHSNER MEDICAL CENTER                                    SECTION: J(5)

### ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 18)** filed by Defendant, Ochsner Clinic Foundation (improperly named as "Ochsner Medical Center" and hereinafter referred to as "Ochsner"), and an *Opposition* thereto **(Rec. Doc. 19)** filed by Plaintiff, Tinika Davis ("Plaintiff"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

During the period between July 8, 2013 and December 19, 2013, Plaintiff, an African-American, was employed by Ochsner as a housekeeper at the Ochsner Health Center in Covington, Louisiana. Plaintiff alleges that during the time she was employed by Ochsner she was subjected to discrimination by several white nurses on account of her race. She further alleges that she complained to her superiors regarding this misconduct, but contends that the discrimination continued unaddressed. Plaintiff alleges that this discrimination escalated to such a level and the workplace became so hostile that she was forced to resign in December 2013.

1

Specifically, Plaintiff contends that white Ochsner employees yelled at her and several other black employees and told them that they were not allowed to use the ladies' locker room or the break room. Further, Plaintiff claims that the white nurses would roll their eyes and make false claims about the black housekeepers. Plaintiff claims that one white housekeeper was not subjected to this treatment. Plaintiff also complains that the white nurses purposefully created hazards for the black housekeepers by disposing needles in regular trash cans, rather than medical waste bins. She claims that one particular doctor would cover his cup with his hand when passing her in the hall. However, Plaintiff admits that Ochsner employees never used racial slurs or other racially offensive language.

On December 4, 2013, Plaintiff and another black housekeeper, Raquel Pichon, found a noose hanging over a computer screen in an office they were cleaning. The noose was tied around a Rice-a-Roni box. Later, Gina Ashley, a nurse at the clinic, admitted to hanging the noose over the computer screen of Troy Tallent, the RN Supervisor Clinical Operations Coordinator. (Rec. Doc. 23-7.) Tallent testified in an affidavit that he is a fan of the San Francisco 49ers football team. (Rec. Doc. 23-5.) Tallent said that his co-workers knew he liked to eat Rice-a-Roni (the "San Francisco treat") and watch 49ers football games. *Id*. The 49ers and the New Orleans Saints played at the New Orleans Superdome on November 17,

2

2013. *Id.* The Saints defeated the 49ers. *Id.* Subsequently, Ashley hung the noose and Rice-a-Roni box in Tallent's office to gloat about the Saints' win. (Rec. Doc. 23-7.) Because Tallent rarely used his office or desk, the noose remained draped over his computer for several weeks. (*See* Rec. Doc. 23-5.)

Even though Plaintiff alleges that the noose offended her, Ochsner claims that she did not immediately report its presence to her supervisors. Plaintiff states that she notified her supervisor, Tony Whalum, on December 5. (Rec. Doc. 23-3, at 21.) On December 11, Plaintiff and Pichon went to the office to see if the noose had been taken down. The noose was still up, and someone had strung it around a Halloween skeleton. The skeleton had been colored black. Ashley claims that she did not place the skeleton in the noose. Neither Plaintiff nor Ochsner knows who is responsible for doing so. One of Plaintiff's co-workers, Melissa Taylor, reported the noose and skeleton to Whalum on December 12. Whalum immediately had the offending items removed. Plaintiff subsequently met with Ochsner management, and the Human Resources department investigated the noose incidents. However, Plaintiff felt that she could no longer work at the clinic and resigned on December 19.

Plaintiff then filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which provided her with a right-to-sue letter in October 2014. Plaintiff subsequently filed the

3

present lawsuit before this Court on January 14, 2015, acting pro se and claiming that she was discriminated and retaliated against by Ochsner based on her race in violation of Title VII of the Civil Rights Act of 1964. Ochsner filed the instant motion on March 22, 2016, seeking summary judgment in its favor. Plaintiff mailed her opposition to the Court, which it received on April 1.

## **PARTIES' ARGUMENTS**

In its motion, Ochsner seeks summary judgment on all of Plaintiff's claims. First, Ochsner argues that Plaintiff failed to show that she experienced a hostile work environment based on racial harassment. Ochsner claims that Plaintiff cannot show that the alleged harassment was based on her race. Also, Ochsner argues that the harassment was not so severe or pervasive so as to alter a term, condition, or privilege of employment. Further, Ochsner claims that it took prompt action to remedy the harassment by removing the noose and fully investigating Plaintiff's claim. Second, Ochsner argues that it is entitled to summary judgment on Plaintiff's discrimination and retaliation claims because she cannot demonstrate that she was subjected to adverse employment action. To the extent that Plaintiff alleged she was constructively discharged, Ochsner argues that she cannot establish intolerable working conditions. Moreover, Ochsner claims that Plaintiff was not constructively discharged because she resigned without affording Ochsner an opportunity to address her concerns.

4

In her opposition, Plaintiff reiterated the facts underlying her claim. Plaintiff summarized the incidents of alleged race-based harassment against her and her fellow black housekeepers. Further, Plaintiff claims that she suffered emotional harm and felt uncomfortable and afraid at work because of the harassment. Plaintiff acknowledges that some of the incidents she complained about may have been trivial, but she argues that she felt discriminated against and hated.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury

5

could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

**DISCUSSION**

Because Plaintiff filed suit pro se, her petition does not specifically delineate her causes of action. However, the Court finds that Plaintiff alleged four causes of action arising under Title VII: (1) hostile work environment, (2) constructive discharge, (3) retaliation, and (4) unlawful discrimination. The Court will address each claim in turn.

## I.  Hostile Work Environment

Title VII provides that an employer may not "fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment on a Title VII hostile work environment claim, a plaintiff must establish that: (1) she is a member of a protected class, (2) she was subject to unwelcome harassment, (3) the harassment affected a term or condition of her employment, and (4) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Jones v. Delta Towing LLC*, 512 F. Supp. 2d 479, 487 (E.D. La. 2007) (citing *Turner v. Baylor Richardson Med. Cent.,* 476 F.3d 337, 347 (5th Cir. 2007); *Celestine v. Petroleos de Venezuela SA,* 266 F.3d 343, 353 (5th Cir. 2001)).

For harassment to affect a "term, condition, or privilege of employment" it must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). To determine whether a hostile work environment exists, the court will consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Further, the plaintiff must "subjectively perceive the harassment as severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris*, 510 U.S. at 21-22). However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (internal quotation marks omitted). "[A] regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII." *E.E.O.C. v. WC & M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (citing *Walker v. Thompson,* 214 F.3d 615,

8

626 (5th Cir. 2000); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)).

In this case, Plaintiff failed to establish the third element of her hostile work environment claim. Plaintiff claims that white employees forbade the black housekeepers from using the break room and women's locker room. However, Plaintiff states that she ignored the white employees' demands. Thus, this behavior did not alter a term or condition of her employment. Further, Plaintiff cannot prove that the nurses were motivated by racial animus when they failed to properly dispose of needles. Nor can Plaintiff prove that the white doctor who covered his cup when passing her in the hall did so with any racial intent. These events amount to "isolated incidents" and do not constitute a "regular pattern of frequent verbal ridicule or insults."

Plaintiff's most serious claim is based on the noose incident. "Under the proper circumstances, the presence of a noose at the workplace might constitute an extremely serious event causing a discriminatory change in the terms and conditions of one's employment." *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 861 (E.D. Tex. 2014*), aff'd,* No. 15-40162, 2016 WL 826349 (5th Cir. Mar. 2, 2016) (citing *Hudson v. Cleco Corp.,* 539 F. App'x 615, 620 (5th Cir.2013)) (internal quotation marks omitted).[1]

---

[1] In *Brooks*, the plaintiff claimed racial discrimination based on United States Code Title 42, Section 1981, instead of Title VII. However, the

9

"[T]he presence of a noose can certainly be considered harassment by African American . . . employees." *Cargo v. Kan. City S. Ry. Co.,* No. 05-2010, 2012 WL 1014707, at *6 (W.D. La. Mar. 22, 2012). The noose in this case was originally intended to tease Tallent about his favorite football team's loss. Later, an unknown person added a black-colored skeleton to the noose, which seems to be a racially motivated act.

However, district courts in the Fifth Circuit require more serious incidents for the display of a noose to amount to a hostile work environment. *Brooks*, 70 F. Supp. 3d at 861 (collecting cases: *Carter v. Luminant Power Servs. Co.,* No. 10-CV-1486-L, 2011 WL 6090700, at *30 (N.D. Tex. Dec. 6, 2011); *Filer v. Donley,* No. 4:10-CV-310-A, 2011 WL 196169, at *7 (N.D. Tex. Jan. 20, 2011), *rev'd on other grounds,* 690 F.3d 643 (5th Cir. 2012) (granting summary judgment against employee whose supervisor publicly displayed a noose in his office because no rational jury could find an abusive work environment when the plaintiff viewed the noose only once for a matter of a few minutes); *Jimerson v. Garrett Aviation Servs., LLC,* No. H-09-0790, 2010 WL 5067692, at *1, 4-5 (S.D. Tex. Dec. 6, 2010) (holding that a rope in the shape of a

---

court's analysis is the same because "[c]laims of racial discrimination brought under [Section] 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *Mendoza v. Helicopter,* 548 F. App'x 127, 128 (5th Cir. 2013).

noose hanging from the rafters at the plaintiff's workplace, that a coworker stated was to "wrap around [the] [p]laintiff's neck," was insufficient to support a hostile work environment claim, as the incident was isolated and unaccompanied by physical contact, and the plaintiff did not flee or seek help.).

While hanging a noose in a workplace is an offensive act that employers should discourage, Plaintiff cannot show that it created a hostile work environment. The addition of a black skeleton to the noose was an isolated incident. Further, neither Plaintiff nor Ochsner knows who is responsible for placing the skeleton in the noose. Even if Plaintiff could show that this single incident created a hostile work environment, she cannot meet the fourth element of her claim. Ochsner took prompt remedial action as soon as it learned of the presence of the skeleton in the noose. Whalum immediately took the noose down, and Ochsner promptly investigated the claims of racial harassment. Thus, Plaintiff did not introduce sufficient evidence to prove her hostile work environment claim. Ochsner is entitled to summary judgment.

## II. Constructive Discharge

Second, Plaintiff claims that working at Ochsner became intolerable due to the frequent harassment. Accordingly, she resigned on December 19, 2013. To prove a hostile environment constructive discharge claim, the plaintiff must show "working conditions so intolerable that a reasonable person would have felt

11

compelled to resign." *Jones*, 512 F. Supp. 2d at 491 (citing *Pa. State Police v. Suders,* 542 U.S. 129, 147 (2004)). This is a heightened standard requiring more severe conduct than a hostile work environment claim. *See id.* at 492. Further, "unless conditions are beyond ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress." *Id.* at 491 (internal quotation marks omitted).

Here, Plaintiff failed to establish sufficiently severe and pervasive discrimination to support her hostile work environment claim. Therefore, her constructive discharge claim fails as a matter of law. Further, Plaintiff resigned while Ochsner was still investigating her claims. Because she did not remain at her job while seeking redress, she cannot claim she was constructively discharged. Ochsner is also entitled to summary judgment on this claim.

**III. Retaliation**

Plaintiff claims that Ochsner retaliated against her for reporting discriminatory behavior. To prove a retaliation claim, the plaintiff must establish a prima facie case by showing that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Baker v. Am. Airlines, Inc.,* 430 F.3d 750, 754 (5th Cir. 2005). The court must dismiss

the retaliation claim if the plaintiff fails to establish a prima facie case. *Jones*, 512 F. Supp. 2d at 492.

Under Title VII, a plaintiff may engage in protected activity in two ways. First, she may oppose any practice made unlawful under Title VII. 42 U.S.C. § 2000e-3(a). Second, she may make a charge, testify, assist, or participate in any manner in an investigation, proceeding, or hearing under Title VII. *Id.* Here, Plaintiff claims to have opposed unlawful discrimination under Title VII by reporting discrimination to her supervisor. To satisfy the "opposition clause," the plaintiff must show that she had a "reasonable belief that the employer was engaged in unlawful employment practices." *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. 1981). "An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim." *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914-15 (5th Cir. 2008). An adverse employment action occurs when a "reasonable employee would have found the challenged action materially adverse," meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). "To establish a causal link because the protected activity and the adverse employment decision, the evidence must demonstrate that

13

the decision maker had knowledge of the protected activity." *Tureaud*, 294 F. App'x at 914 (internal quotation marks omitted).

Plaintiff engaged in protected conduct by reporting potential discrimination to her supervisor, and her belief that the alleged discrimination was illegal may have been objectively reasonable. However, the Court finds it difficult to determine what "adverse employment action" Plaintiff suffered. As the Court sees it, Plaintiff alleged two potential retaliatory acts: (1) the hanging of the black skeleton and (2) her discharge. As discussed above, Plaintiff chose to leave the job. She was not constructively discharged. Further, the hanging of the black skeleton cannot amount to an adverse employment action. While it may have dissuaded Plaintiff from making further complaints, the action cannot be attributed to her employer. Neither Ochsner nor Plaintiff knows who added the black skeleton to the noose. Retaliation claims tend to encompass actions like termination, assignment to less desirable duties, and suspension. *See Burlington*, 548 U.S. at 70; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Therefore, the hanging of the skeleton was not an adverse employment action. Ochsner is entitled to summary judgment on Plaintiff's retaliation claim.

**IV. Discrimination**

To the extent that Plaintiff alleged unlawful discrimination under Title VII, the Court can easily dispose of her claim. When

14

a plaintiff alleges that her employer has discriminated against the plaintiff based on race, the plaintiff must first present to the court a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff presents a prima facie case of discrimination by showing that she (1) is a member of a protected class, (2) was qualified to hold the position of her employment, (3) was discharged or subject to an adverse employment action, and (4) was replaced by someone who is not a member of that protected class. *Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 254 (5th Cir. 1990) (citing *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 n. 6 (1981)). As discussed above, Plaintiff cannot establish that she was discharged or subjected to an adverse employment action. Thus, her discrimination claim fails, and Ochsner is entitled to summary judgment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Ochsner's *Motion for Summary Judgment* is **GRANTED**.

New Orleans, Louisiana this 7th day of April, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE